JOHN DUNN

v.

JOSEPH T. WEIR ET AL.

*Fraudulent Conveyances—Evidence.*

The fact that the transaction is unbusiness-like is not sufficient to establish fraud in a conveyance, in the face of the testimony of credible witnesses as to the *bona fides.*

[Opinion filed June 15, 1889.]

APPEAL from the Circuit Court of Randolph County; the Hon. GEO. W. WALL, Judge, presiding.

Messrs. H. Clay Horner and T. F. Alexander, for appellant.

Messrs. R. F. Goddard and A. G. Gordon, for appellees.

Reeves, J. This is a suit in chancery, in which appellant, complainant in the court below, seeks to set aside as fraudulent a certain chattel mortgage executed by appellee Joseph T. Weir to J. J. Borders, and subject the property covered by the mortgage to the payment of a debt of $500 which appellant had been compelled to pay as security for appellee Joseph T. Weir.

The facts relied upon to support the allegations of the bill are the same as in the case of The Aultman & Taylor Company v. Weir et al., decided at the present term, so far as they relate to the chattel mortgage.

It is shown that Joseph T. Weir was considerably in debt in August, 1885, when he applied to J. J. Borders for a loan of $8,000. He made his note to Borders for $8,000 and secured the same by a chattel mortgage on substantially all his personal property, consisting of wheat in stack, oats, growing corn, hay, some thirty head of horses, fifty cattle, fifty sheep, thirty hogs and a large lot of farming implements.

Borders in speaking of this loan says that Weir came to him with the statement that some of his creditors were about to press payment of their claims, and wanted to negotiate a loan of $8,000 and secure the same by a mortgage upon his personal property. Weir represented his real estate as all under mortgage and he expected with the money borrowed to take up most of the real estate mortgages held against him. After the note and mortgage were drawn up, Weir concluded he could get through the pressure of debts against him with $6,000. It was further agreed that as soon as the real estate mortgages which Wier was to pay out of the money he was about to borrow from Borders were released he would give Borders a real estate mortgage in lieu of the chattel mortgage. Borders agreed that when this change was effected in the security, he would let Weir have the remaining $2,000 if

he could, conveniently, and Weir still needed it. Borders gave his check on the bank of J. J. Borders & Son for $6,000, which the son swears he paid in currency to Weir. Soon after this transaction J. J. Borders found out that Weir's indebtedness was much larger than he had represented, and that some of his creditors had put their claims in suit against Weir. He also ascertained that Weir had disposed of a considerable portion of the property embraced in the chattel mortgage to persons to whom he claimed he was indebted. Feeling himself unsafe in this condition, he took possession of such of the mortgaged property as he could find and sold it realizing from the sale and from some of the property which Weir himself had sold, about $2,758.

In September, 1886, after the chattel mortgage sale, Borders and Weir had a settlement and Weir paid Borders the balance due him on the loan of $6,000, and Borders surrendered to Weir the note and chattel mortgage.

It further appears that after Weir drew the money on the $6,000 check—some time after—he brought back to the bank a sealed package which he said contained $6,000, which he left as a special deposit with the bank until September 11, 1886, when he withdrew the special deposit and from the money contained in the package he paid J. J. Borders the balance due him on the $6,000 loan. These facts are sworn to by the Borders. There is no testimony that contradicts this.

It is argued with great earnestness that this transaction, as detailed by the Borders, is not a business one, done in the way that such business men as the Borders would conduct a business matter of this kind under the circumstances; that it would have been much safer and more business-like for Borders, if he wanted to help Weir in his financial difficulty, to have taken up, by assignment to himself, the real estate mortgages about to be foreclosed, than to have risked his money upon the uncertain security of a chattel mortgage. There is force in this argument, but it would hardly be a safe practice to ignore the testimony of unimpeached witnesses because what they say they did in a business transaction may not appear to be the wisest and safest thing to do, under the

circumstances. Facts attested by the oath of credible witnesses must stand even in the face of a clear and forcible argument, that, judging by the ordinary course of business affairs, the fact should have been different from what it is sworn to be.

The fact that the mortgage was for $8,000 and only $6,000 received by the mortgagor, is explained by the testimony, so as not to taint the transaction with fraud.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*